HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARY CLAIRE RUTHERFORD,

           Plaintiff,

v.

STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, STATE OF WASHINGTON CHILD STUDY & TREATMENT CENTER; MARY LAFOND, Chief Executive Officers, and JON MCCLELLAN, M.D., Medical Director

           Defendants.

No. CV04-5020RBL

ORDER

## I. INTRODUCTION

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment. [Dkt # 37]. The Court has reviewed the materials submitted in support of, and in opposition to, the motion. For the following reasons, the court GRANTS Defendants' Motion in part and DENIES it in part.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1343(4).

### III. BACKGROUND

Plaintiff, Mary Claire Rutherford ("Rutherford") was employed as the Director of Nursing for the Defendant State of Washington, Department of Social and Health Services at the State of Washington Child Study & Treatment Center. [Compl. Dkt #1]. The Child Study and Treatment Center (CSTC) is the State psychiatric hospital for disturbed children and adolescents. [Defs' Motion. Dkt #37 at 2]. Many of the patients have previously suffered abuse or neglect. [*Id.*]

Rutherford was hired in 1992 as the Director of Nursing Services. Her responsibilities included overseeing nursing policies, procedures and nursing practices. [*Id.*]. Defendant Dr. Jon McClellan (McClellan) is the Medical Director at CSTC. He is an Associate Professor with the School of Medicine at the University of Washington. His services are contracted by the University to the Department of Social and Health Services. [*Id.* at 2]. Rutherford reported to Dr. McClellan for purposes of clinical practice. [*Id.*]. Defendant Mary LaFond was the Chief Executive Officer at the CSTC during the period from 1995 until March, 2003. Plaintiff reported to her for administrative purposes. [*Id.* at 3].

Rutherford raised several concerns regarding inadequate investigation of allegations of sexual abuse among patients and staff as well as physical/psychological abuse of the children housed at the facility. [Decl. Mark Anderson. Ex1. Dkt # 38]. Rutherford alleges that in retaliation for raising these concerns she was harassed, embarrassed, and demoted. Rutherford alleges that these conditions led to her resignation on September 2, 2001. [*Id.*] Defendants allege that Rutherford's demotions and negative performance evaluations were due to her disruptive behavior in the workplace. [Decl. Mary LaFond. Dkt #40]. Defendants allege that after multiple warnings regarding Rutherford's tone and outbursts, Rutherford was demoted. Rutherford chose not to appeal. Defendants deny any retaliatory conduct and also allege that any disciplinary measures were unrelated to Rutherford raising concerns about the facility. [*Id.*]

Rutherford asserts claims for damages and equitable relief based on violations of her First Amendment and Fourth Amendment rights, as well as violations of the Washington State Constitution, Article I, § 2, 3, 5 - freedom of speech, due process, and equal protection

guarantees. Lastly, Plaintiff claims that Defendants defamed and damaged her good name and reputation.

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

Defendants seek summary judgment on all claims. Defendants assert that Plaintiff's allegations of violations of her rights to freedom of speech, due process, and equal protection under both the state and federal constitutions fail as a matter of law. After reviewing the evidence, in the light most favorable to Rutherford, the Court DENIES Defendants' Motion in part and GRANTS it in part.

### V. DISCUSSION

**A. Federal Constitutional Claims**

**1. First Amendment Free Speech**

Any person, who under the color of law, subjects another to the deprivation of any right under the Constitution is liable to the party injured. 42 U.S.C. § 1983. Plaintiff contends that the

Defendants, while acting under color of law, deprived her of her constitutional right to free speech by retaliating against her when she spoke out about issues of public concern. Defendants seek summary judgment on Plaintiff's claim of retaliation. In order to determine whether a public employer retaliated based on an employee's exercise of 1st Amendment free speech rights, the reviewing court must determine:

> a) Whether the speech is entitled to constitutional protection, *see Pickering v. Board of Education,* 391 U.S. 563, 569-72, 88 S.Ct. 1731, 1735-37, 20 L.Ed.2d 811 (1968); b) whether, if protected, the speech was a substantial or a motivating factor in the action taken against [Plaintiff], *see Mt. Healthy,* 429 U.S. at 285-87, 97 S.Ct. at 575-76; and c) whether the City demonstrated that the same action would have been taken in the absence of the protected activity, *see Allen v. Scribner,* 812 F.2d 426, 433-36 (9th Cir.1987), *amended,* 828 F.2d 1445 (9th Cir.1987).

*Gillette v. Delmore*, 886 F.2d 1194, 1197 (9th Cir. 1989)(citing *Mt. Healthy City School Dist. Bd. Of Educ. V. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.ED.2d 471 (1977)). In order for the speech to be entitled to constitutional protection, it must first be shown to involve a matter of public concern. *Id.* at 1197. If it does, then the area of public concern must outweigh any adverse affect on the State as an employer. *Id.*

**a. Protected Speech**

Defendants cite *Garcetti v. Ceballos,* 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)(restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen), and argue that Plaintiff's speech was not protected because it was made pursuant to her official duties and consequently not protected by the 1st Amendment. Defendants argue that Plaintiff's complaints regarding the sexual behaviors of the patients at CSTC were directly related to her responsibility to address treatment concerns. Consequently, Defendants contend that these complaints were made pursuant to Plaintiff's official duties and do not implicate her 1st Amendment rights. *Id.* at 421. Further, Defendants also argue that the Plaintiff's speech was not an area of public concern because Plaintiff did not complain to any outside watchdog group or other individuals to whom citizens commonly complain. *Id.* at 423. Instead of complaining to outside groups, Plaintiff complained to senior officials within the Department where she worked.

ORDER - 4

Plaintiff argues that all complaints were matters of public concern because they involved improper discharge of Defendants' governmental responsibilities and potential neglect and abuse of wards of the state. *Connick v. Myers*, 461 U.S. 138, 148, 103 S.Ct. 1684 (1983). Plaintiff compares her speech to the speech found protected in *Schwartzman v. Valenzuela*, 846 F.2d 1209 (9th Cir. 1988)( At the time of Schwartzman's termination in May 1985, a government employee could not with impunity be discharged in retaliation for the exercise of his first amendment rights).

*Schwartzman* involved a staff psychologist at Napa State Hospital who alleged that he was fired because he publically criticized the hospital for unnecessarily administering psychotropic drugs. *Id.* at 1210. The Court found that Schwartzman's speech was protected. . Plaintiff here contends her speech criticizing the hospital for inadequately dealing with complaints of sexual interaction among the patients, is similarly protected. Plaintiff points out that she wrote letters of complaint to Mr. Braddock (Secretary of the DSHS) who was several levels above her in the chain of command, and that these letters were therefore not written in the course of her official duties. Plaintiff also argues that Defendants improperly expand *Garcetti*, ignoring subsequent decisions limiting it. Plaintiff cites *Freitag v. Ayers,* 468 F.3d 528, 542-548 (2006), where the Court held it was the employee's responsibility as a citizen to expose official malfeasance to broader scrutiny. Plaintiff argues that she had no responsibility to direct the activities of her superiors and therefore could not have been carrying out her job duties by reporting the failure of CSTC's CEO and Chief Medical Officer to take appropriate actions to protect the children.

It is true that allegations of sexual misconduct among children at a psychiatric facility are issues of importance to the public. Whether or not the Plaintiff's speech was aimed at bringing public attention to the issue is a more difficult decision. The fact that Plaintiff did not complain to outside agencies blurs the line of public concern. However, in viewing the facts in the light most favorable to the Plaintiff, her letter to Mr. Braddock may be seen as a citizen doing her duty to shed light on an issue concerning the public. For these reasons at this time the Court cannot find as a matter of law that the speech did not address matters of public concern.

ORDER - 5

Defendants also assert that Plaintiff's personal interest in avoiding misconduct charges and being demoted do not outweigh CSTC's need to manage personnel issues. *Connick*, 461 U.S. at 147-48. Defendants point out that in conducting the *Pickering* balance, courts must grant public employers "wide discretion and control over the management of its personnel and internal affairs. *Id.* at 151. In determining a public employee's rights of free speech, the problem is to arrive "at a balance between the interests of the [employee], as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick* at 138 *citing Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811. P. 1687. Defendants assert that the government has a strong state interest in avoiding interference with work, personnel relationships, or disruptions in the public employer's function. *Id.* Defendants argue that their issue was not with Plaintiff's concerns regarding the patients, but rather with the Plaintiff's disruptive behavior that precluded her from effectively doing her job. Defendants contend that this disruptive behavior interfered with CSTC's ability to carry out its mission.

Plaintiff asserts that the more tightly the speech is protected by the 1st Amendment, the greater the employer's showing must be that a disruption occurred as a result of the speech. *Hyland v. Wonder*, 972 F.2d 1129, 1139 (9th Cir. 1992). Plaintiff cites to *Johnson v. Multnomah County*, 48 F.3d 420, 427 (9th Cir. 1995), arguing that the employer must show more than mere disruption, it must show actual injury to its legitimate interests. Plaintiff alleges that the concern for the safety of mentally ill children in a State run facility is of the utmost public concern and claims of alleged disruption are not significant enough to warrant dismissal.

While the Court recognizes the importance of allowing wide discretion for public employers, in viewing the facts in the light most favorable to the Plaintiff, it is very important for an employee to be able to voice concerns regarding the health and safety of children at a psychiatric facility without fear of retaliation. While the evidence may show at trial that the Plaintiff's behavior was disruptive and the employer's interest in effectively running a business

was disrupted, at this time the Court cannot say as a matter of law that the Defendants' interests outweigh those of the Plaintiff.

Because the Court cannot say that the speech did not address matters of public concern as a matter of law and cannot say that Plaintiff's interest is outweighed by the State's, the Court cannot find that the speech was unprotected as a matter of law.

**b. Motivating Factor**

After a showing that the speech was protected, Plaintiff must show that the speech was substantial or a motivating factor in the action taken against her. *Delmore*, 886 F.2d at 1197. Defendants argue that Plaintiff offers no evidence of retaliatory animus. Defendants point out that neither LaFond nor Dr. McClellan knew of the two letters (dated December 5, 2000 and July 2, 2001) Plaintiff wrote to Mr. Braddock, prior to Plaintiff's demotion. Therefore, Defendants contend that the demotion was due to Plaintiff's divisive and dysfunctional behavior – and was not motivated by Plaintiff's claimed free speech. Defendants cite *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982), arguing that evidence that the employer was aware that the plaintiff had engaged in the protected activity is essential to proving a causal link between the speech and the adverse employment action.

Plaintiff cites *Keyser v. Sacramento City Unified School District*, 265 F.3d 741 (9th Cir. 2001) to show three ways in which a plaintiff can show that retaliation was a substantial or motivating factor behind a defendant's adverse employment actions: 1) proximity in time between the protected action and the allegedly retaliatory employment decision from which a jury logically could infer that the plaintiff was terminated in retaliation for the speech, 2) evidence that the employer expressed opposition to his speech, either to him or to others, or 3) evidence that the employer's proffered explanations for the adverse employment action were false and pretextual. *Id.* at 751-752. Plaintiff argues that she enjoyed excellent evaluations before she began objecting to dangerous conditions and the failure to properly supervise highly inappropriate sexual behavior among children. In the following three to eight months Plaintiff was accused of misconduct and disciplined. Defendants escorted Plaintiff off the premises within hours of Mrs. LaFond being handed a copy of the July 2, 2001 letter to Mr. Braddock.

In viewing the facts in the light most favorable to the Plaintiff, the allegedly adverse actions were initiated within a window of time that could be found to support an inference of retaliation and therefore, summary judgment is not appropriate.

    **c. Changing Actions**

The last prong of the inquiry is whether the City demonstrated that the same action would have been taken in the absence of the protected activity. *Delmore*, 886 F.2d at 1197. Defendants claim that they would have made the demotion decision regardless of the content of Plaintiff's voiced concerns. Defendants contend that the demotion was due to Plaintiff's disruptive behavior and was unrelated to her raising concerns about the treatment of the children. Plaintiff contends that other individuals who yelled and used profanity in meetings were not subjected to the level of discipline she was subjected to. These are factual questions, and a jury should determine what motivated Defendants' actions.

The Court cannot find, as a matter of law, that Plaintiff's speech was unprotected. Further, there are issues of material fact regarding Defendants' motivation behind disciplinary measures. For these reasons, summary judgment is inappropriate. Defendants Motion for Summary Judgment regarding Plaintiff's Free Speech claims is DENIED.

    **2. Due Process**

Public employees who can only be discharged for cause have a constitutionally protected property interest in their employment and cannot be fired without due process. *Gilber v. Homar,* 520 U.S. 924, 117 S. Ct. 1807, 1811, 138 L. Ed. 2d 120 (1997). The Defendants move to dismiss Plaintiff's Due Process claim. Defendants argue that Plaintiff was afforded more than adequate process. They cite *Cleveland Bd. Of Educ. V. Loudermill*, 470 U.S. 532, 547-48, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), arguing that the process due can be provided by a pre-termination opportunity to respond, coupled with a post-termination administrative procedure. Defendants point out that Plaintiff was informed of the investigation against her. She was provided an opportunity to meet with Jack Morris, the Assistant Director of the Mental Health Division, to present any evidence she felt was necessary. Plaintiff did so with her attorney present. Further, Plaintiff was also provided with post-deprivation process as she had a

right to appeal the demotion to the state Personnel Appeals Board and was reminded of this right. Plaintiff chose not to appeal. Defendants contend that they have met the higher *Loudermill* due process requirements despite the fact that this was a demotion and not a termination.

Plaintiff argues that she need not exhaust state administrative remedies in order to avail herself of remedial action under section 1983. *Patsy v. Bd. Of Regents,* 457 U.S. 496, 507, 102 S. Ct. 2557, 73 L.Ed.2d 172 (1982). She argues that due process was not met because she was not afforded an opportunity to address the charges against her with Ms. LaFond, the decision-maker, before discipline was imposed.

Three factors to be considered when determining what constitutes due process are: 1) the private interest that will be affected by the official action, 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and 3) the Government's interests. *Id.* The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976). The Defendants assert that they have met this burden and the Court agrees. It is undisputed that Plaintiff and her attorney were notified of the investigation, met with Jack Morris at an Administrative review, as well as had the right to appeal the demotion to the Personnel Appeals Board. Under the facts, Jack Morris was a reasonable substitute for Mary LaFond at the pre-deprivation proceeding. The Court finds no *Loudermill* violation and Defendants motion to dismiss Plaintiff's Due Process Claims is GRANTED.

### 3. Equal Protection

The Fourteenth Amendment's guarantee of equal protection is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Defendants quote Plaintiff's interrogatory number 13 in which Plaintiff was asked to list other employees who were treated differently and Plaintiff stated that no such allegation was alleged. Plaintiff did not respond to this contention in her opposition to the Defendants' Motion. Without comparators who were treated differently, Plaintiff's equal

protection claim can survive. Defendants' Motion for summary Judgment on Plaintiff's Equal Protection claims is therefore GRANTED.

**B. Qualified Immunity**

Pursuant to the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982). In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Id.*

The first inquiry is whether (viewed in the light most favorable to the non-moving party) the facts show that the Defendants' conduct violated a Constitutional right. *See Brosseau v. Haugen*, 125 S.Ct. 596 (2004). Here, viewed in the light most favorable to Mrs. Rutherford, the evidence establishes that she addressed continuing serious problems of inadequate investigations of allegations of sexual abuse among patients and staff at her place of work. Mrs. Rutherford began reporting issues concerning the inadequacies of the investigations. She was told that she "had a problem with sex." Plaintiff wanted to report these incidents to Child Protective Services and as a result was discouraged (and even prohibited) from attending medical staff meetings. Mrs. Rutherford wrote to Dennis Braddock, Secretary of Department of Social and Health Services, which was not part of her job. In his response, Mr. Braddock indicated that Mary LaFond was aware of these concerns and thanked her for bringing them forward. No person contacted Mrs. Rutherford to discuss her allegations and concerns. Subsequent to the letter, Mrs.

Rutherford was subjected to disciplinary action and was removed from her position as Director of Nursing and demoted to a line staff nursing position at a different facility. Mrs. Rutherford delivered to Mary LaFond a copy of her July 2 memo to Mr. Braddock. Mrs. Rutherford was escorted off campus by security and instructed to have no further contact with any personnel. Mrs. Rutherford's dismissal coincided with a DSHS survey team coming to review the quality of care at CSTC. These facts, when viewed in the light most favorable to Plaintiff, could support Mrs. Rutherford's contention that she was discharged on a basis that violates her First Amendment rights.

The second qualified immunity inquiry is whether, at the time of the officers' actions, it was "clearly established" that they were violating Mrs. Rutherford's First Amendment rights. *See Brosseau*, supra. Mrs. Rutherford relies in part on *Roth v. Veterans Administration*, 856 F.2d 1401, 1408 (9th Cir. 1988) to demonstrate that medical personnel employed by a publically operated hospital have a 1st Amendment right to comment on matters of wastefulness, ethical and statutory violations, and risk to patients.

The Defendants argue that the applicable 1st Amendment law was not clearly established at the time of the alleged retaliatory conduct. Defendants claim that the pivotal question of whether an employee's job related speech was protected, when made pursuant to her official duties, was not decided until *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). Defendants point out that the present case was stayed pending the outcome of the *Garcetti* decision. The Supreme Court did not resolve the question until 2006, and consequently, Defendants claim, the law could not have been clearly established in 2001. Furthermore, Defendants assert that the Due Process law was also not clearly established, as the Supreme Court has never held that a public employee, when subjected to discipline less than termination, is entitled to a full *Loudermill*-like process.

In order to determine whether the right was clearly established the court is to "survey the legal landscape" at the time of the alleged misconduct. *Trevino v. Gates*, 99 F.3d 911, 916 (9th Cir. 1996). It was well-established at the time of the conduct in question that legal protection was recognized for public employees who speak out on matters of public concern. *Roth,* 856

F.2d 1401. Whether or not this speech was made primarily pursuant to Plaintiff's employment or whether it was intended to bring a matter of concern to the public is an issue yet to be resolved. Plaintiff has presented facts, when viewed in the light most favorable to her, that support her position that the actions taken against her constituted a violation of her 1st Amendment rights, and that the law regarding speaking out on matters of public concern was established at the time of the conduct in question. While the court is aware of and agrees with the purpose for qualified immunity protection, for the reasons discussed above, the Defendants' Motion for Summary Judgment on qualified immunity in this case is DENIED.

### B. Washington State Constitution Claims

Plaintiff claims that Defendants violated her rights under the Washington Constitution, Article I, §§§ 2, 3, 5 to freedom of speech, due process, and equal protection. However, the Washington due process clause does not constitute an independent cause of action in this type of circumstance. *Spurrell v. Block*, 40 Wn. App. 854, 861 (1985). According to the Washington Court of Appeals, the state Constitution protects against arbitrary actions by the government; when an individual has had his day in court, his due process rights have been satisfied. *Id.* A court may *post hoc* invalidate actions which do not conform with due process, but may not award "reparations." *Id.* Defendants' Motion for Summary Judgment on Plaintiff's state due process claims is GRANTED.

Plaintiff also claims that Defendants violated her right to free speech under Article I, section 5 of the Washington Constitution. That section provides "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." Defendants argue that Washington does not have a civil rights act akin to 42 U.S.C. § 1983 and alleged violations of the State constitution are not independently actionable torts. *Reid v. Pierce County*, 136 Wn.2d 195, 213, 961 P.2d 333 (1998); *Spurell v. Black*, 40 Wn. App. 854, 701 P.2d 529 (1985); *Systems Amusement v. State,* 7 Wn. App. 516, 500 P.2d 1253 (1972). Defendants further assert that Plaintiff abandoned her claim for violation of the Washington State Constitution when she did not respond to this argument in her response. Fed. R. Civ. P. 56(e); Local Rule 7(b)(2).

Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations without "the aid of augmentative legislation." *Blinka v. Washington State Bar Ass'n*, 109 Wn. App. 575, 591, 36 P.3d 1094, 1102 (2001) *citing Sys. Amusement, Inc. State,* 7 Wn. App. 516, 517, 500 P.2d 1253 (1972); *see also Spurrell v. Bloch*, 40 Wn. App 854, 86—61, 701 P.2d 529 (1985); *Reid v. Pierce County*, 136 Wn.2d 195, 961 P.2d 333 (1998). In light of the lack of legislative guidance on the issue, and considering Washington courts' consistent refusals to recognize a cause of action in tort for constitutional violations, a state law constitutional claim cannot stand. *Id.* Defendants' Motion for Summary Judgment on Plaintiff's other state law claims is granted, and these claims are DISMISSED.

### C. Defamation

Defendants assert that the Plaintiff's defamation claim is barred by the statute of limitations. The statute of limitations for defamation claims in Washington is two years. RCW 4.16.100(1). Plaintiff resigned on August 20, 2001. Defendants claim that after Plaintiff's resignation, no statements regarding Plaintiff were made to prospective employers or other members of the medical community, nor did any documents get placed in Plaintiff's file. Plaintiff did not file her complaint until January 15, 2004. Plaintiff has not responded with any facts contradicting these factual claims. Any alleged defamatory statements, therefore, appear to have occurred more than two years prior to the filing of the complaint, and are time barred. Defendants' Motion for Summary Judgment on Plaintiff's Defamation claim is therefore GRANTED, and that claim is DISMISSED.

### D. Equitable Relief

The Court has broad discretion in fashioning a remedy in cases such as this one. *Decker v. North Idaho College,* 552 F.2d 872, 874 (9th Cir. 1977). The Court declines to abandon potential remedies before it has had an opportunity to have the record fully developed at trial. Defendants Motion for summary Judgment on Plaintiff's Claim for Equitable Relief is DENIED.

**CONCLUSION**

Therefore, it is hereby ORDERED that Defendants' Motion for summary Judgment on Plaintiff's claims is GRANTED in part and DENIED in part. Defendant's Motion on Plaintiff's State law claims is GRANTED. Defendants' Motion on Plaintiff's 1st Amendment claim is DENIED. Defendant's Motion on Plaintiff's Due Process claim is GRANTED. Defendants' Motion for Summary Judgment on qualified immunity in this case is DENIED. Defendants' Motion on Plaintiff's Defamation claim is GRANTED. Defendants' Motion on Plaintiff's claim for Equitable Relief is DENIED.

**IT IS SO ORDERED.**

Dated this 29th day of July, 2008.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE